(99 South. 595)

No. 26293.

## ANSLEY v. DOOLEY.

(Feb. 18, 1924. Rehearing Denied by Division A March 24, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Partnership** ⟨⟩121—Evidence insufficient to show breach of partnership agreement or renewal thereof.

In an action on an alleged real estate partnership contract whereby defendant was to pay plaintiff $5,000 and certain expenses, and also an automobile, in return for an interest in plaintiff's business, and might, if he desired, withdraw from the business on a fixed future date, but the sums paid were not to be refunded, evidence *held* insufficient to show a breach by defendant or a renewal of the partnership agreement after the date upon which he might withdraw therefrom.

2. **Partnership** ⟨⟩121—Evidence insufficient to show correctness of bills for expenses sued on.

In an action on an alleged partnership agreement between plaintiff and defendant, whereby defendant was to pay certain office

expenses, evidence *held* insufficient to establish the correctness of the expense bills sued on.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Mrs. Eugene Ansley against Hugh Dooley. Judgment for plaintiff, and defendant appeals. Reversed, and judgment for defendant.

Eugene S. Hayford, of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. On October 16, 1922, the defendant entered into the following contract with plaintiff:

"New Orleans, La., October 16, 1922.

"This contract and agreement entered into by and between Mrs. Eugene Ansley and Hugh Dooley witnesses:

"The said Hugh Dooley agrees and binds himself to pay Mrs. Eugene Ansley five thousand dollars ($5,000), and to furnish for the joint use of the business one Moon sedan automobile, for an interest of forty nine (49%) in the business now conducted by Mrs. Ansley. Said five thousand dollars to be paid as follows: $50.00 per month up to March 1st, 1923, and on that date the balance to be paid in cash to Mrs. Ansley. Hugh Dooley to pay all ordinary office expenses, such as office rent, clerical hire, stationery, telephone, advertising, upkeep of automobile, etc., until March 1st, 1923, if on that date Mr. Dooley may desire, he can withdraw from the business, and such sums as he has paid to Mrs. Ansley and such sums as he has paid for office expenses shall not be refunded to him, and he shall have no interest in the business, after this date the expenses are to be paid from the receipts of the business. Both parties to this agreement are to give their undivided attention to the business, except that Mr. Dooley may give as much as one day each week to his plantation."

Petitioner alleges that defendant paid her from October 16, 1922, to February 12, 1923, a period of 17 weeks, $50 per week, or the sum of $850 under said contract.

Plaintiff alleges that defendant continued in the business after March 1, 1923, and that he is therefore indebted unto her, under the terms and conditions of the contract, in the sum of $5,000, less $850 previously paid, or the sum of $4,150, and also in the additional sum of $137.37 for certain office expenses incurred prior to March 1, 1923.

Defendant denies in his answer that he continued in the business as a partner after March 1, 1923, and avers that during the first week in January, 1923, he notified petitioner that he would not care to continue as her partner after March 1, 1923, as the business was not profitable.

He alleges that during the latter part of January, 1923, the "Medical Building" deal with J. A. Legendre came into the office as a prospective sale, and that on March 1, 1923, a contract was signed for the sale of the "Medical Building," and that, at the special request of plaintiff, defendant continued to assist and aid her in carrying out the negotiations for this sale, which was not finally consummated until after March 15, 1923, and that it was agreed that the firm of Mrs. Eugene Ansley should receive a commission of $5,000, which was received by plaintiff, who refused to pay defendant his 49 per cent. of said commission.

Defendant alleges that the sale of the "Medical Building" was an isolated one, the said firm of Mrs. Ansley not before or since having made similar sales, and that during the term of the contract, that is, from October 16, 1922, and up to and including the 1st day of March, 1923, said partnership had negotiated one small sale of a property belonging to Mr. Hebert to Mr. Paretti, and that the commission as a result of said sale was divided between the partners.

[1] There is no dispute between the parties to the contract as to the interpretation of same. It is conceded that Dooley, under the terms of the contract, had a perfect right to

withdraw on March 1, 1923, if he so desired. The bone of contention in this case is whether he did so actually withdraw from the partnership or whether he continued as a partner after that date.

The evidence shows that the contract in the case resulted from an advertisement for a partner inserted by plaintiff in the Times-Picayune. It also clearly shows that both parties intended that this contract should be reduced to writing; that defendant, after rejecting several written contracts presented to him by plaintiff, drafted the present agreement, which was accepted. The contract evidences a partnership for a limited period only, or a partnership on probation, to be made permanent on March 1, 1923, if defendant was satisfied and continued as a partner in the business.

Plaintiff does not pretend that any written articles of partnership were drafted by her and defendant on or after March 1, 1923; she does not pretend to present to this court any partnership license for conducting the real estate business from March 1, 1923, nor does she show any payment of expenses of the partnership after March 1, 1923, from the receipts of the business, as stipulated in the original agreement, nor any division of partnership commissions after that date with defendant. Plaintiff's suit was filed May 25, 1923, and the months of March, April, and nearly the whole of May had elapsed before the present suit was brought. These are not the only suspicious circumstances in connection with plaintiff's testimony.

Plaintiff alleges in her petition that the defendant had rejected and refused to sign the contract in this case until after he had investigated her business for weeks and had ascertained the nature and extent and character of the same.

Defendant denies that he made any such investigation, and plaintiff has utterly failed to prove that he did. To the contrary, defendant specially avers that, relying on the truthfulness of the representations made by plaintiff as to the extent of her business, he consented to the contract of date October 16, 1922, and entered into a partnership agreement with her. Yet plaintiff testifies positively, and reiterates her testimony, that she made no statement to Mr. Dooley as to the amount of business she had in her office. It is wholly unnatural and unreasonable that any man who takes the business precaution to reduce a contract to writing, evidencing a partnership agreement, should blindly bind himself to pay the sum of $200 per month and all of the partnership expenses for the privilege of a profit of 49 per cent. in a business, without any statement whatever from his partner as to the income from such business, and without any investigation. We cannot accept plaintiff's testimony as to this matter. It is flatly contradicted by defendant, who testifies positively that the representations of plaintiff as to her business induced him to sign the contract. Nor can we accept as consistent with plaintiff's testimony that defendant continued in the business as her partner after March 1, 1923, the fact that on May 3, 1923, before this suit was brought, the plaintiff signed a contract dividing the commissions between herself, the defendant, and Mr. R. A. Uhalt in the contemplated sale of a square of ground on Canal street.

If a partnership existed between her and defendant, why did she not at that time provide in said contract for a division of the commission between said partnership and Uhalt?

Plaintiff occupies also the inconsistent position in this case of refusing to divide a commission of $5,000 accruing on business originating during the partnership from October 16, 1922, to March 1, 1923, and at the same time of demanding the sum of $4,150 as balance due her under the contract, because

of the fact that defendant had continued as her partner in the business after March 1, 1923.

None of the usual acts connected with the operation of the business of a partnership are testified to by plaintiff in this case, such as the payment of partnership expenses, the division of partnership profits, the making of partnership agreements for the sale of real estate, the holding of partnership licenses for the conduct of the business of the partnership after March 1, 1923. Moreover, the plaintiff made her returns to the real estate board on March 1, 1923, as an individual, and not as a partnership.

Plaintiff has attempted to make out a case against defendant solely upon her oral testimony as to defendant remaining in her office after March 1, 1923, and as to certain acts of defendant in visiting with her certain pieces of property for sale, his occasional use of the office telephone, and the receiving of his mail there. Yet plaintiff does not, produce a single instance during this period of any sale made by the partnership, of any commission divided between the partners, of any partnership expense paid from the revenues of the firm, or of any written agreement of any kind between them as partners.

Defendant admits that he remained at the partnership office in the Maison Blanche Building after March 1, 1923, to assist in handling the sale for the "Medical Building," the option to purchase having expired March 15, 1923, and then having been renewed thereafter for several days. He states, however, that he did so at the express solicitation of plaintiff in connection with this sale.

Defendant also satisfactorily explains his presence at the partnership office after March 1, 1923, by stating that he had made arrangements with plaintiff after March 1, 1923, to work out of her office on a commission basis of less than 49 per cent. under the license taken out by him to do business as a real estate salesman for the firm of plaintiff and himself, and subsequently, with the knowledge and permission of plaintiff, he had this license transferred on April 21, 1923, so as to permit him to do business as a real estate salesman for the firm of R. L. Viguerie, bonded and licensed real estate broker.

That this testimony is unquestionably true is shown by the fact that the sales of the partnership from October 16, 1922, to March 1, 1923, were few, and afforded but small profit, with the single exception of the "Medical Building" sale, in which plaintiff denied defendant any right to participate in the commissions. Why, then, should defendant, or any other reasonable man, desire to remain in this partnership? The stenographer in the partnership office was discharged by defendant the middle of February, 1923, as there was not sufficient work for her to do. The fact, also, of the small returns from this business is corroborative of defendant's testimony that early in January, 1923, he notified plaintiff that he would withdraw March 1, 1923, from the partnership, as the profits were not satisfactory. He had been in the partnership at that time for three months. In the face of these circumstances the fact that after March 1, 1923, defendant occasionally loaned the plaintiff his automobile to inspect a piece of property on Canal street and at other places, her nephew driving the plaintiff on certain occasions and the defendant driving her at other times, is of no significance, especially as plaintiff testifies that he had 'no interest in these transactions, and acted merely as a matter of accommodation.

Why defendant should cling with grim tenacity to a business from which he received no adequate return being inexplicable, his testimony, corroborated as it is by all of the circumstances of the case, must necessarily prevail and be accepted by the court as reflecting the true facts as to the issues before us. It is to be noted that plaintiff sued defend-

ant only for 17 weeks at the rate of $50 per week, and alleged payment of these weekly installments down to February 12, 1923, when they should have been paid down to March 1, 1923. Defendant has explained the omission of plaintiff to claim for the last two weeks of February, 1923, in his testimony by showing that he had paid her $950 instead as $850, as alleged by her.

We find no breach of the contract by defendant, and no renewal of the temporary partnership agreement between the parties after March 1, 1923.

[2] This brings us to the consideration of the claim for expenses, alleged to be due by defendant and incurred by him prior to March 1, 1923, under the contract of October 16, 1922.

The items contained in the account sued upon are as follows:

| | |
|---|---|
| Times-Picayune (advertising) | $ 55 42 |
| Item (advertising) | 24 00 |
| Stenographer | 6 00 |
| Office help (girl) | 3 50 |
| Court record | 1 50 |
| Hansell & Bro. | 4 50 |
| Consumers' Light & Power Co. | 1 62 |
| Half of bond for 5 months | 20 83 |
| Telephone bill | 20 00 |
| | $137 37 |

The only testimony we find in the record on the part of plaintiff as to these bills is as follows:

"Q. And these bills aggregating $137.37, which you have identified, were all contracted prior to March 1, 1923? A. They were."

Defendant states in his testimony that he paid all bills contracted prior to March 1, 1923, about which there was no controversy. Defendant disputes the correctness of these bills, and states that he has never been able to get the straight of them. He refers in his testimony especially to the items for advertisement, states that a telephone bill is due him, that he is unable to tell whether there might be a small balance due Hansell & Bro. or not, and that he never heard of the court record bill of $1.50 until this suit was brought.

Defendant was presented on the witness stand with itemized bills of the Times-Picayune for advertisements, one of these bills being dated January 15, 1923. This bill is for "balance due," as we gather from the testimony, but does not state for what items the balance was due. The bill goes back to August, 1922, when defendant was not connected with the plaintiff in business.

We fail to find in the record any itemized statements from the Times-Picayune, Item, or any one else. Evidently such meager testimony as the plaintiff has given in this case, where these bills are disputed, is not sufficient to establish the correctness of the bills sued upon. If these bills have any just foundation, they should be itemized, and their correctness established by the testimony of the various parties to whom they are due. The items, if well founded, should be established with legal certainty by competent witnesses, and not left to mere conjecture.

The trial judge rendered judgment in favor of plaintiff, both for the sum of $4,150 alleged to be the balance due of the $5,000 to be paid by defendant March 1, 1923, if he continued the partnership, and also for the full sum of $137.37, alleged to be due on account for office expenses, etc.

Under our view of the facts of the case, this judgment is erroneous as to the allowance of the sum of $4,150, as defendant did not continue the partnership after March 1, 1923, and the account for $137.37 was not proven with sufficient legal certainty.

It is therefore ordered that the judgment appealed from be set aside and reversed, and it is now ordered that there be judgment in favor of defendant rejecting the demand of plaintiff for the sum of $4,150, and of nonsuit as to plaintiff's claim for $137.37; appellee to pay all costs.

Rehearing refused by Division A, composed of Chief Justice O'NIELL and Justices ROGERS and BRUNOT.